_jLeBLANC, J.
This matter arises out of an automobile accident, the occurrence of which is contested. After a bench trial, judgment was rendered in favor of the plaintiffs and against the defendants, Capitol Transportation Corporation (CTC) and Nancy Kelly, driver of the bus and employee of CTC, awarding each of the five plaintiffs the sum of $1,200.00 in damages plus medical expenses. CTC appeals that judgment, maintaining that plaintiffs failed to prove that an accident occurred between their vehicle and a CTC bus. Because the issue is solely factual, the determination is based primarily on the observations and credibility determinations made at the trial level, which can rarely be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Nevertheless, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. We find such is the case in this appeal and, accordingly, the judgment of the trial court is reversed.
The plaintiffs are the driver of the vehicle, Kim Johnson Turner, Troy Turner, Kim’s husband who was not in the vehicle at the time of the accident, Chelsea Johnson Turner and Sharde Johnson Turner, the Turner’s two minor children who were passengers in the vehicle at the time of the incident, and Latriee Rutledge and Renee “Carondelet” Warren, also guest passengers in the vehicle at the time of the incident. Ms. Turner, Ms. Rutledge and Ms. Warren testified regarding their version of the facts surrounding the accident; the two children, Sharde and Chelsea did not testify.
FACTS
The trial court found, and the record reveals, that the testimony of the parties was essentially conflicting. Ms. Turner, Ms. Rutledge and Ms. feWarren each testified that an accident between the Turner vehicle and a city bus driven by Ms. Kelly occurred on March 26, 1994; however, their testimony regarding the facts surrounding the accident is inconsistent. Ms. Kelly, the bus driver, admitted taking a left turn from Woodpecker Street onto Avenue C around the time the accident allegedly occurred, and she recalled seeing plaintiffs’ vehicle and hearing the horn blowing; however, she vehemently denied that a collision occurred. Further, she testified there is no possible way the bus she was driving could have struck the Turner vehicle and she have been unaware of the impact. David Hayes, a resident of Avenue C at the time of the incident who was named by the plaintiffs as an eyewitness to the accident, also testified. Although he denied having witnessed an accident that day, the trial court expressly relied on his testimony, finding him to be an independent witness whose testimony “supports plaintiffs’ version.” Finally, even the objective evidence, the physical damage to the Turner vehicle, is contested. Although plaintiffs admitted that Troy Turner had previously been involved in an automobile accident which caused damage to the driver’s door of the Turner vehicle, for which he filed a claim and was paid, plaintiffs assert the dent was deepened and the vehicle was scratched as a result of the impact with the bus. CTC introduced documentary evidence of Troy Turner’s prior accident and property damage claim and maintains that plaintiffs failed to prove any damage as a result of the alleged impact with the bus.
Because the evidence in the record is in such conflict and concerns only factual issues, *79 we must determine if the trial court’s credibility determinations were reasonable, in light of the record. Thus, we carefully detail that evidence below.
A.Testimony of Ms. Turner
Ms. Turner testified that on March 26, 1994, she was driving her vehicle in a southbound direction on Avenue C, slowing as she approached the stop sign at the intersection with Woodpecker Street, in Baton Rouge. liPrior to her reaching the stop sign, a city bus which had been on Woodpecker Street made a left turn onto Avenue C, and collided with the driver’s side door of Turner’s vehicle. According to Ms. Turner, the bus “hit my automobile and it hit it so hard that it jacked the side of my car halfway up and it boom, hit back down.” Describing how the impact occurred, Ms. Turner testified, “the bus then sideways hit me, side scraped me, shook my car up and she was gone.” The bus did not stop, but rather kept driving. Ms. Turner testified that she spoke with David Hayes, an eyewitness who was sitting outside his home on Avenue C at the time, and asked if she could borrow his phone to call the police. Mr. Hayes did not have a telephone, so Ms. Turner proceeded to follow the bus, blowing her horn, and trying to get the driver to stop. Finally, she gave up, and went to her grandmother’s house where she called the police.
Ms. Turner admitted that the damage to the driver’s door of her automobile had resulted from a prior accident in which her husband, Troy, had been driving, and for which he had filed a claim and had been paid. However, according to Ms. Turner, the impact with the city bus deepened the dent that was already on the vehicle and caused additional scratches.
In a pretrial deposition, Ms. Turner stated that she was approximately one foot away from the stop sign when the collision occurred; at trial, she could not state specifically how far from the stop sign she was when impact occurred. Further, although she had no medical proof or documentation, Ms. Turner claims that she was approximately two months pregnant at the time of the incident, and that she suffered a miscarriage as a result of the accident. Ms. Turner admitted she was aware that her cousin and guest passenger, Latrice Rutledge, had been in a prior automobile accident, approximately one year earlier, after which Ms. Rutledge claimed she had been pregnant and suffered a miscarriage as a result of said accident. Ms. Turner also admitted that she, herself, had been in three prior automobile ^accidents in the past two to three years, and was treated for neck and back pain after each of those accidents.
B. Testimony of Ms. Warren
Ms. Warren was a backseat passenger on the driver’s side of Turner’s vehicle at the time of the alleged accident. According to Ms. Warren, Turner’s vehicle was slowing and approaching the stop sign at Avenue C and Woodpecker when a city bus made a sharp turn onto Avenue C from Woodpecker and “turned right into the side of the car,” causing a medium to moderate impact. Ms. Warren testified the lower, front part of the bus impacted the Turner vehicle. According to Ms. Warren, David Hayes was an eyewitness to the accident and he was yelling with them for the bus driver to stop. After the impact, they got out of the vehicle and spoke with Mr. Hayes. Because he did not have a phone they could use, they got back into the car to follow and attempt to stop the bus.
C. Testimony of Ms. Rutledge
Ms. Rutledge, Kim Turner’s first cousin, was also a guest passenger in the vehicle at the time of the incident. In a pretrial deposition, Ms. Rutledge testified that the Turner automobile was approaching the stop sign and was approximately six to seven feet from the stop sign at the time of impact with the bus. However, at trial, she was unable to say how far from the stop sign their vehicle was at the point of impact. She testified that the front, bottom of the bus collided with the driver’s side door of the automobile. Also, in her pretrial deposition, Ms. Rutledge stated that they had spoken with David Hayes prior to the accident, but not after the impact, because they were trying to chase the bus down and make it stop. At trial, she stated *80 that they spoke with Mr. Hayes only after the accident.
D. Testimony of Officer Murlwyne Politz
Officer Politz received a call at approximately 6:00 P.M. on March 26, 1994, regarding an automobile accident in the 9900 block of Avenue C at Woodpecker. Although she investigated the accident and testified at trial, bthe police report was not made a part of the record. Officer Politz testified that she spoke with Kim Turner, the driver of the vehicle, who told her that a city bus turned and hit her car, causing a dent on the driver’s door and a scratch on the left side of the vehicle. Officer Politz observed said damage and listed the accident as a “hit and run.” According to the officer, she was told by the plaintiffs that the front part of the bus impacted the side of Turner’s vehicle.
E. Testimony of Nancy Kelly
As stated above, the driver of the city bus, Nancy Kelly, testified and vehemently denied that an accident occurred between the bus she was driving and the Turner vehicle. She became aware of the allegations two days after, when she was told a claim had been filed. At that time, she checked the bus and did not find any evidence of damage. Finally, Ms. Kelly testified there was no way she could have hit another vehicle and been unaware of the impact.
F. Testimony of Dr. Olin K. Dart
Dr. Olin K. Dart testified as an expert witness in accident reconstruction. His testimony was based on his review of the accident report, photographs, as well as his own inspection of the vehicles involved, his inspection of the accident scene, including his attempts to recreate the accident, and the deposition of Kim Turner. Based on the foregoing, Dr. Dart concluded the damage on the Turner vehicle could not have been caused by the bus, as asserted by the plaintiffs. First, in terms of accident reconstruction, Dr. Dart found that if the collision had occurred as the plaintiffs maintain, there would have been damage to the left front of the car, and he found none. Further, his inspection of the city bus revealed no damage whatsoever, and according to plaintiffs’ version of events, he would have expected to find “at least a number of scrapes or scratches, possibly some dents.” Additionally, based on measurements taken by Dr. Dart, he concluded that the bumper of the bus was approximately four inches or ^higher than the position of the dent on the door of the Turner vehicle; therefore, the physical damage to the vehicle could not have been caused by the bus. Furthermore, given the 45 foot turning radius of the bus, in order for there to have been a collision with another vehicle as alleged by the plaintiffs, the Turner car would have had to have been “quite a bit further” from the stop sign than testified by the plaintiffs.
G. Testimony of Claude Davis
Mr. Claude Davis, an insurance adjuster with Baton Rouge Brown Claims Service, testified that he received a call on March 28, 1994 from Ms. Turner regarding an accident which had occurred on March 26, 1994. He met with her at the accident scene where she pointed out the dent in the driver’s door as the damage which had been caused by the accident with the bus. According to Mr. Davis, Ms. Turner did not inform him that there was any prior damage to her vehicle. Mr. Davis also inspected and took photographs of the front and rear of the bus; he found no indication of any damage to the bus which might have been caused by the Turner vehicle. He also took measurements and found, as did Dr. Dart, that the bumper of the bus was several inches higher than the damage to the vehicle.
H. Testimony of Mr. John Denman and Mr. Eugene Wilson (CTC)
Mr. John Denmam, the chief of Operations for CTC, and Mr. Eugene Wilson, supervisor at CTC, also participated in the investigation of the incident and testified at trial. As part of their investigation, they went to the scene of the accident and attempted to reenact the accident by using an actual bus making a left hand turn from Woodpecker onto Avenue C, and placing a car at varying positions on Avenue C. These demonstrations led them to conclude that an accident, as testified to by *81 the plaintiffs, could not have happened. In fact, according to Mr. Wilson, “there is no way in the world” that the front of the bus could have hit the side of the vehicle by making a left hand turn onto Avenue C.
hi. Testimony of Dwight David Hayes
Finally, Mr. David Hayes, named and identified by the plaintiffs as an eyewitness to the accident testified that on March 26, 1994, he lived on Avenue C about half a block from the intersection at Woodpecker Street. According to Mr. Hayes, at approximately “noontime,” he and some friends were sitting in the front yard, when they saw a city bus pass his house on Avenue C and continue toward the stop sign at Woodpecker. The bus proceeded on Avenue C, past Woodpecker, and a few moments later, they heard a loud noise like a wreck. He also testified that he remembered seeing the Turner vehicle later that day, but he specifically denied witnessing an actual wreck. Mr. Hayes was not questioned by either side regarding his conversations, if any, with the plaintiffs either before or after the incident.
ANALYSIS
CTC maintains the trial court erred in finding it liable to plaintiffs based on two assignments of error: (1) the trial court was clearly wrong in holding that the testimony of David Hayes supported plaintiffs’ version of the alleged accident; and (2) the trial court was clearly wrong in finding that the bus contacted the car.
We find the testimony of David Hayes did little to support plaintiffs’ version of the incident; in fact, on several points it directly contradicts plaintiffs’ accounts. Mr. Hayes stated that, at around “noontime,” he saw a city bus pass in front of his house on Avenue C, continue on Avenue C, past Woodpecker, and then he heard a loud noise like a wreck. According to plaintiffs’ account, the bus was travelling on Woodpecker prior to making a left turn onto Avenue C. Mr. Hayes also stated that he did not witness any accident that day, contrary to plaintiffs’ assertions that he was an eyewitness with whom they had spoken after the incident. Finally, Mr. Hayes’ testimony concerned his observations at noon on the day in question; the accident, according to plaintiffs, as reflected by the police officer’s account, ¡^occurred at approximately 6:00 PM. Clearly, the trial court erred in finding this testimony supported plaintiffs’ case, and in relying on that finding to rule in plaintiffs’ favor.
We also find merit to appellants’ contention that the trial court erred in finding that the bus contacted the Turner vehicle. The record is replete with conflicting evidence. The accounts given by the plaintiffs contain internal inconsistencies with prior deposition testimony, as well as conflicts with one another’s versions of the facts. Additionally, the objective evidence of the physical damage to the Turner vehicle, given the evidence of the prior accident and the damage caused thereby, is inconclusive. And, the objective evidence of the absolute lack of physical damage to the bus contradicts the testimonial evidence that an accident occurred. Finally, the expert testimony established there is no way the collision could have occurred as stated by the plaintiffs. Although findings of fact can rarely be disturbed on appeal, this is clearly one of those rarities where the record as a whole is so internally inconsistent, the objective evidence directly contradicts the witness’ story, and plaintiffs’ version is so implausible on its face to warrant a reversal.
Accordingly, the judgment of the trial court is reversed. Plaintiffs are assessed all costs of the trial and of this appeal.
REVERSED.